IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LORETTA LOPEZ, as ADMINISTRATRIX of the ESTATE OF VALLIA VALENE KARAHARISIS, | : : : : | CIVIL ACTION |
| Plaintiff, | : : | No. 15-_____ |
| v. | : : : | JURY TRIAL DEMANDED |
| BUCKS COUNTY; PRIMECARE MEDICAL, INC.; KRISTIN SZUCH HUI, LPN; MEDICAL JOHN DOES 1-10; CORRECTIONAL JOHN DOES 1-10, | : : : : : : | |
| Defendants. | : : | |

# COMPLAINT

## I. PRELIMINARY STATEMENT

1. This is a civil rights survival and wrongful death action brought under 42 U.S.C. § 1983 and raising supplemental state-law claims concerning the defendants' deliberate indifference and negligence in failing to ensure necessary treatment for, and monitoring of, plaintiff's decedent, 29-year-old Vallia Valene Karaharisis ("Ms. Karaharisis"), while she was undergoing heroin detoxification upon admission to the Bucks County Correctional Facility ("BCCF"). As a result of the defendants' actions and inactions, Ms. Karaharisis died due to heroin withdrawal three days after her admission. Plaintiff Loretta Lopez now seeks on behalf of Ms. Karaharisis's estate and heirs damages for the substantial pain and suffering and financial losses caused by the defendants' conduct.

## II. JURISDICTION

2. This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

## III. PARTIES

3. Vallia Valene Karaharisis, who was at all times relevant to this Complaint a resident of Philadelphia, Pennsylvania, died on September 29, 2013. At the time of her death, she was 29 years old.

4. Plaintiff Loretta Lopez is the mother of Ms. Karaharisis. On August 4, 2014, Ms. Lopez was appointed as the Administratrix of the Estate of Vallia Valene Karaharisis by the Office of the Register of Wills of Philadelphia County. Ms. Lopez brings this action in her capacity as Administratrix of the Estate and for the benefit of Ms. Karaharisis's heirs.

5. Defendant Bucks County is a municipal government entity in the Commonwealth of Pennsylvania, which manages and oversees the Bucks County Correctional Facility ("BCCF"), 1730 South Easton Road, Doylestown, PA.

6. Defendant PrimeCare Medical, Inc. ("PrimeCare"), which has a principal place of business at 3940 Locust Lane, Harrisburg, PA 17109, was, at all times relevant to this Complaint, the holder of a contract to provide all medical services to inmates at BCCF.

7. At all times relevant to this Complaint, defendant Kristin Szuch Hui, LPN, was a Licensed Practical Nurse employed by defendant PrimeCare and assigned to provide medical services at BCCF.

8. At all times relevant to this Complaint, defendant Medical John Does 1-10, were medical professionals employed by defendant PrimeCare assigned to provide medical services at

BCCF. Plaintiff does not presently know the names of these defendants but will seek leave to amend the Complaint so as to name each appropriate defendant after initial discovery.

9. At all times relevant to this Complaint, defendant Correctional John Does 1-10, were correctional officers or supervisors employed by defendant Bucks County to work at BCCF. Plaintiff does not presently know the names of these defendants but will seek leave to amend the Complaint so as to name each appropriate defendant after initial discovery.

10. At all times relevant to this Complaint, all defendants acted under color of state law.

11. At all times relevant to this Complaint, defendants Hui and Medical John Does 1-10 were acting as agents, servants, and/or employees of defendant PrimeCare, were acting within the scope and course of their employment, and were acting under the direct control and supervision of defendant PrimeCare.

12. At all times relevant to this Complaint, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to Ms. Karaharisis.

### IV. FACTUAL ALLEGATIONS

13. On or about September 26, 2013, Ms. Karaharisis was arrested and sent to BCCF based on allegations that she had violated the terms of a probationary sentence arising out of a conviction for credit card fraud.

14. Shortly after her admission to BCCF, Ms. Karaharisis underwent an intake medical examination conducted by defendant Hui.

15. Ms. Karaharisis told defendant Hui that she was a heavy user of heroin and that she injected up to two bundles—that is, twenty bags—of heroin on a daily basis.

3

16. Ms. Karaharisis told defendant Hui that she had maintained this level of usage continuously for the preceding two years.

17. Defendant Hui recorded the information provided by Ms. Karaharisis in an electronic medical record maintained by defendant PrimeCare.

18. Ms. Karaharisis's report of heavy heroin usage was not uncommon for inmates admitted to BCCF and other correctional facilities.

19. As known by medical and correctional professionals, the abuse of heroin and other opiate-based controlled substances had increased dramatically in the years preceding Ms. Karaharisis's admission to BCCF.

20. During that time period, patterns of heroin and opiate abuse showed particularly significant increases among young women of the same demographic background as Ms. Karaharisis.

21. Reasonably trained correctional policymakers and officers and reasonably trained practitioners of correctional healthcare are aware of these patterns of increased abuse of heroin and other opiate-based controlled substances.

22. Reasonably trained correctional policymakers and officers and reasonably trained practitioners of correctional healthcare are particularly attuned to patterns of heroin and opiate abuse due to the disproportionately high number of heroin and opiate abusers typically present in a correctional population.

23. Reasonably trained correctional policymakers and officers and reasonably trained practitioners of correctional healthcare are, likewise, aware of the significant medical issues presented in heroin users detoxifying from heroin due to sudden termination of their usage upon admission to a correctional facility.

24. Although detoxification for heroin users who are otherwise healthy is not dangerous when it takes place with proper monitoring and treatment, detoxification is known to have several dangerous and potentially fatal medical consequences, and, as such, inmates experiencing heroin detoxification have serious medical needs.

25. Such dangerous medical consequences are particularly likely to be present in persons who are long-term heavy users of heroin, like Ms. Karaharisis.

26. The serious medical consequences present with heroin detoxification include dehydration, electrolyte imbalance, neurological arrhythmia (seizures) or cardiac arrhythmias leading to sudden cardiac arrest.

27. For these reasons, basic standards of correctional healthcare require that persons who are admitted to correctional facilities with obvious signs of heroin or other opiate abuse be consistently monitored and have their vital signs assessed at regular intervals.

28. Such monitoring and assessment is necessary to ensure that an inmate experiencing heroin detoxification is not at risk for more serious medical consequences, including those outlined above.

29. Defendant PrimeCare, as an entity that regularly practices correctional health care and holds itself out as expert in the medical issues presented in an inmate population, is aware of the need for monitoring of persons admitted to correctional facilities with histories of heroin or other opiate abuse.

30. Defendant Bucks County, as an entity that operates a correctional facility, is aware of the medical issues presented in an inmate population and is thus aware of the need for monitoring of persons admitted to correctional facilities with histories of heroin or other opiate abuse.

31.     Defendants Bucks County and PrimeCare are aware of the need to establish specific policies, practices and guidelines for their respective employees regarding care for inmates with histories of heroin or other opiate abuse.

32.     At the conclusion of her intake medical examination in the early morning hours of September 26, 2013, defendant Hui noted that Ms. Karaharisis was at risk for heroin detoxification.

33.     Defendant Hui was, therefore, aware of Ms. Karaharisis's serious medical needs.

34.     Despite this awareness, defendant Hui failed to take any action to ensure that Ms. Karaharisis would be monitored or evaluated while undergoing heroin detoxification.

35.     At approximately 8:00 a.m. on September 29, 2013, three days after her admission to BCCF, Ms. Karaharisis was found unresponsive in her cell.

36.     Ms. Karaharisis was pronounced dead at 8:15 a.m. that morning.

37.     An autopsy and toxicology report concluded that Ms. Karaharisis experienced "sudden death during heroin withdrawal."

38.     Upon information and belief, between her admission to BCCF on September 26, 2013 and her death on September 29, 2013, Ms. Karaharisis's medical condition was never assessed by a medical professional.

39.     Defendant PrimeCare's medical records show no record of any vital signs taken for Ms. Karaharisis between September 26, 2013 and September 29, 2013.

40.     Defendant PrimeCare's medical records show no record of medical observations of any kind for Ms. Karaharisis between September 26, 2013 and September 29, 2013.

41. Based upon the absence of recorded vital sign assessments or other observations, Ms. Karaharisis was left to undergo detoxification from an extremely heavy pattern of heroin usage for three days without any medical monitoring or assessment.

42. The lack of medical monitoring or assessment was due to the failure of defendant Hui to properly inform medical and correctional staff that Ms. Karaharisis required such monitoring and assessment.

43. Upon information and belief, defendant Medical Does 1-10 were aware of Ms. Karaharisis' patterns of heroin usage and the fact that she was undergoing detoxification from a heavy pattern of usage, but these defendants took no action to assess or monitor Ms. Karaharisis's medical status.

44. Upon information and belief, defendant Correctional Does 1-10 were aware of Ms. Karaharisis' patterns of heroin usage and the fact that she was undergoing detoxification from a heavy pattern of usage, but these defendants took no action to monitor Ms. Karaharisis's medical status.

45. Upon information and belief, the lack of monitoring of Ms. Karaharisis's medical status was due to a policy, practice and/or custom of correctional and medical staff at BCCF to assign inmates, referred to as "babysitters," the responsibility to monitor persons undergoing detoxification, notwithstanding the fact that such "babysitters" have no training, medical or otherwise, concerning the risks of detoxification.

46. The failures of the individual defendants to monitor and/or assess Ms. Karaharisis were due to the failure of defendants Bucks County and PrimeCare, with deliberate indifference, to establish appropriate policies, practices and procedures for the monitoring and assessment of inmates undergoing detoxification from heroin and other opiates after admission to BCCF.

47. Ms. Karaharisis's death was the direct and proximate result of the actions and inactions of defendants Bucks County, PrimeCare, Hui, Medical Does 1-10 and Correctional Does 1-10 as described above.

48. At all relevant times, defendants Bucks County, PrimeCare, Hui, Medical Does 1-10 and Correctional Does 1-10 were aware of Ms. Karaharisis's serious medical needs and failed, with deliberate indifference, to ensure that Ms. Karaharisis received needed evaluation and treatment.

49. At all times relevant to this Complaint, the conduct of all defendants was in willful, reckless, and callous disregard of Ms. Karaharisis's rights under federal and state law.

50. As a direct and proximate result of the conduct of all defendants, Ms. Karaharisis experienced enormous physical and emotional pain and suffering.

51. As a direct and proximate result of the conduct of all defendants, Ms. Karaharisis was caused to lose her life and thereby caused to suffer complete loss of earnings and earning capacity.

## V. WRONGFUL DEATH AND SURVIVAL ACTIONS

52. Plaintiff, as Administratrix of the Estate of Vallia Valene Karaharisis, brings this action on behalf of Ms. Karaharisis's heirs under the Pennsylvania Wrongful Death Act, 42 Pa. C.S. § 8301.

53. Ms. Karaharisis's heirs under the Wrongful Death Act are:

   a. Her mother, Loretta Lopez, the plaintiff in this action, and

   b. Her father, Lambrio Karaharisis, 2229 S. 8th Street, Philadelphia, PA 19148.

54. Ms. Karaharisis did not bring an action against defendants for damages for the injuries causing her death during her lifetime.

55. Ms. Karaharisis's heirs have, by reason of Ms. Karaharisis's death, suffered pecuniary loss, and have or will incur expenses for the costs of Ms. Karaharisis's funeral, the costs of Ms. Karaharisis's headstone, and the costs of administering Ms. Karaharisis's estate.

56. Ms. Karaharisis's heirs have, by reason of Ms. Karaharisis's death, suffered further pecuniary loss including expected contributions and financial support from Ms. Karaharisis for food, clothing, shelter, medical care, education, entertainment, recreation and gifts.

57. Plaintiff also brings this action on behalf of the Estate of Vallia Valene Karaharisis under the Pennsylvania Survival Statute, 42 Pa. C.S. § 8302, under which all claims Ms. Karaharisis would have able to bring had she survived, may be brought by Ms. Karaharisis's estate.

58. Ms. Karaharisis's estate has, by reason of Ms. Karaharisis's death, suffered pecuniary loss, and has or will incur expenses for the costs of Ms. Karaharisis's funeral, the costs of Ms. Karaharisis's headstone, and the costs of administering Ms. Karaharisis's estate.

59. As a direct and proximate result of the conduct of all defendants, Ms. Karaharisis experienced extraordinary physical and emotional pain and suffering before her death, and, as a result of her death, suffered complete loss of earnings and earnings capacity.

60. Plaintiff, via this survival action, seeks damages for these harms caused to Ms. Karaharisis.

## VI. CLAIMS FOR RELIEF

### COUNT I
**Plaintiff v. Defendants Hui, Medical Does 1-10 and Correctional Does 1-10**
**Federal Constitutional Claims**

61. Defendants Hui, Medical Does 1-10 and Correctional Does 1-10 were deliberately indifferent to Ms. Karaharisis's serious medical needs and thereby violated Ms. Karaharisis's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Ms. Karaharisis's right to due process of law under the Fourteenth Amendment to the United States Constitution.

### COUNT II
**Plaintiff v. Defendants Bucks County and PrimeCare, Inc.**
**Federal Constitutional Claims**

62. The violations of Ms. Karaharisis's constitutional rights under the Eighth and/or Fourteenth Amendments to the United States Constitution, plaintiff's damages, and the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of defendants Bucks County and PrimeCare, which have, with deliberate indifference, failed to establish policies, practices, and procedures to ensure that inmates at BCCF undergoing detoxification from heroin and other opiates receive appropriate monitoring and assessment.

### COUNT III
**Plaintiff v. Defendants Hui, Medical Does 1-10 and PrimeCare**
**State Law Negligence Claims**

63. Defendants Hui and Medical Does 1-10 had a duty to comply with generally accepted medical standards of care in their medical treatment of Ms. Karaharisis.

64. Defendant PrimeCare, Inc., had a duty to establish policies, practices and procedures to ensure that inmates admitted to BCCF and undergoing heroin detoxification, like Ms. Karaharisis, received proper monitoring and assessment

65. Defendants Hui, Medical Does 1-10 and PrimeCare violated their respective duties of care to Ms. Karaharisis.

66. The defendants' violation of their duty of care to Ms. Karaharisis was a direct and proximate cause and a substantial factor in bringing about Ms. Karaharisis's damages as outlined above, and, as a result, defendants are liable to plaintiff.

67. Because defendants Hui and Medical Does 1-10 were acting as agents, servants, and/or employees of defendant PrimeCare, and because these individual defendants were acting within the scope and course of their employment, and under the direct control and supervision of defendant PrimeCare, defendant PrimeCare is, likewise, liable to plaintiff on the basis of *respondeat superior* liability.

## VI.  REQUESTED RELIEF

**Wherefore**, plaintiff respectfully requests:

A. Compensatory damages as to all defendants;

B. Punitive damages as to defendants Hui, Medical Does 1-10, Correctional Does 1-10, and PrimeCare;

C. Reasonable attorney's fees and costs;

D. Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial.

Jonathan H. Feinberg
I.D. No. 88227
jfeinberg@krlawphila.com


/s/ Susan M. Lin
Susan M. Lin
I.D. No. 94184
slin@krlawphila.com

KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
215-925-4400
215-925-5365 (fax)

*Counsel for Plaintiff*